UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HIGHLAND PARK PLASTIC SURGERY
CENTER, L.L.C., a Texas limited liability
company,

                 Plaintiff,

    v.

JADE HOLDINGS GROUP, LLC, a Florida
limited liability company; JADE TODAY, a
Florida entity; JADE HOLDINGS GROUP,
LLC d/b/a STRAX REJUVENATION, a
Florida limited liability company; SRAI, INC.
f/k/a STRAX REJUVENATION AND
AESTHETICS INSTITUTE, LLC f/k/a
STRAX REJUVENATION AND
AESTHETICS INSTITUTE, INC., a Florida
corporation; COSMETIC SURGERY
ASSOCIATES OF BOCA LLC d/b/a NEW
LOOK BOCA, a Florida limited liability
company; BOCA RATON SURGERY
CENTER LLC d/b/a BOCA RATON
SURGERY CENTER, a Florida limited
liability company; ALBERT AUER, a Florida
domiciliary; JEFFERY A. DAVIS, a Florida
domiciliary; PHILLIP M. FEANNY, a
Florida domiciliary; MICHAEL GARNICK, a
Florida domiciliary,

                 Defendants.

Case No. _____

**COMPLAINT FOR VIOLATIONS OF LANHAM ACT UNDER 15 U.S.C. § 1125; VIOLATIONS OF DIGITAL MILLENIUM COPYRIGHT ACT UNDER 17 U.S.C. § 1202**

**JURY TRIAL DEMANDED**

COMES NOW plaintiff, Highland Park Plastic Surgery Center, L.L.C., by and through its counsel, Lane Powell P.C. and McHale and Slavin, P.A., and for its Complaint seeking damages from and injunctive relief against defendants, alleges the following:

## I. INTRODUCTION

1. This is an action by plaintiff Highland Park Plastic Surgery Center, L.L.C. ("Highland Park"), whose principal is George Toledo, M.D., ("Dr. Toledo") for damages, injunctive relief, and attorneys' fees for defendants' willful misappropriation of Dr. Toledo's

copyrighted before-and-after patient images and false advertising in passing off Dr. Toledo's surgical results as their own.

2. Dr. Toledo is one of the country's leading plastic surgeons, specializing in cosmetic and aesthetic procedures of the face and body. He is board-certified by the American Board of Plastic Surgery and by the American Board of Otolaryngology, Head & Neck Surgery. He is a Fellow of the American College of Surgeons and the American Society of Plastic Surgeons. He has published numerous publications in his field and is regularly ranked among the top plastic surgeons in Texas. He was the plastic surgery representative on the advisory board for Blue Cross/Blue Shield of Texas and for the Texas Medical Association. In December 2015, he was named SuperDoctor 2015 by Texas Monthly magazine.

3. Defendants are all Florida-based entities that provide plastic surgery services to a national pool of patients. On information and belief the defendants fall under the umbrella of Jade Holdings Group, LLC, which operates Strax Rejuvenation, Jade Today, and the Boca Raton Surgery Center which has been rebranded as New Look Boca. Strax Rejuvenation is a plastic surgery firm (self-described on its website as "The Nation's Largest Plastic Surgery Center"), providing various plastic surgery options to patients. Jade Today is an active financing firm and plastic surgery referral resource that connects prospective and actual patients with plastic surgeons and monetary support. New Look Boca is a plastic surgery firm that provides various plastic surgery options to patients, following the same low-cost surgery model as Jade Today and Strax Rejuvenation. The individual defendants are all owners and/or officers of the corporate defendants.

4. On their respective websites, defendants post before-and-after images that they claim reflect actual patients and results obtained by their own physicians and affiliates. When discussing their work on facelifts, thigh lifts, breast lifts (sometimes known as breast reductions), and breast augmentations, defendants misappropriate without credit photographs of procedures entirely performed by Dr. Toledo.

5. These acts caused direct harm to Dr. Toledo, who has a national plastic surgery practice built on his skill and experience. Defendants' misappropriation also exposed their patients and clients to risk, potentially misleading them into consenting to invasive surgery under false pretenses that they would receive results akin to Dr. Toledo's work.

6. This action seeks damages for the harm defendants have caused to date and injunctive relief to prevent defendants from falsely advertising their healthcare services.

## II. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because all of the claims arise from federal statutes.

8. This Court has original jurisdiction for matters that arise under the Digital Millenium Copyright Act (17 U.S.C. § 1202) and Lanham Act (15 U.S.C. §§ 1051 et seq.) per 28 U.S.C. § 1338.

9. In the alternative, this Court also has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff Highland Park is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Dallas, Texas. To the best of plaintiff's knowledge, defendants Jade Holdings Group, LLC, Jade Today, SRAI, Inc., Boca Raton Surgery Center LLC, and Cosmetic Surgery Associates of Boca, LLC, are all organized under the laws of the State of Florida with principal places of business—where applicable—in Florida. The individual defendants, to the best of plaintiff's knowledge, are all domiciled in Florida. The amount in controversy in this case greatly exceeds $75,000.

10. This Court has personal jurisdiction over all of the defendants. On information and belief, Florida is the state in which each corporate defendant is incorporated and maintains its principal place of business and in which each individual defendant is domiciled.

11. This Court has proper venue pursuant to 28 U.S.C. §§ 1391(b), (c), and (d), as well as the copyright-specific provisions of 28 U.S.C. § 1400(a).

## III. PARTIES

12. Plaintiff HIGHLAND PARK PLASTIC SURGERY CENTER, L.L.C. ("Highland Park"), is a limited liability company organized and incorporated under the laws of the State of Texas. Its principal place of business is 6110 Sherry Lane, Dallas, TX 75225. Its registered agent and principal is Dr. George Toledo. Highland Park is a well-established plastic surgery practice, catering to a national and international base of patients who seek cosmetic and aesthetic plastic surgery procedures for the face and body.

13. Defendant JADE HOLDINGS GROUP, LLC ("Jade Holdings"), is a limited liability company organized under the laws of the State of Florida. Its principal place of business is 4300 North University Drive, Suite A-202, Fort Lauderdale, Florida 33351. To the best of plaintiff's knowledge, Jade Holdings is the owner of all Strax Rejuvenation intellectual property, fictitious names, and business entities—including but not limited to Strax Rejuvenation and Jade Today. It is also the owner of all Boca Raton Surgery Center intellectual property, fictitious names, and business entities—including but not limited to Boca Raton Surgery Center, LLC, and Boca Raton Surgery Center.

14. Defendant JADE TODAY ("Jade Today") is a Florida entity of an unknown type which maintains the domain name www.jadetoday.com. On its website, it lists its principal place of business as 4300 North University Drive, Suite A-202, Sunrise, Florida 33351. To the best of plaintiff's knowledge, Jade Today is a "sister company" of Strax Rejuvenation, as specified by Strax Rejuvenation on at least one of its websites: www.straxrejuvenation.com. Jade Today operates an active plastic surgery center and financing firm that connects prospective and actual patients with plastic surgeons and monetary support.

15. Defendant JADE HOLDINGS GROUP, LLC d/b/a STRAX REJUVENATION ("Strax Rejuvenation") is a Florida limited liability company organized under the laws of the State of Florida. Its principal place of business as listed in its public corporate records as 4300 North University Drive, Suite E-200, Fort Lauderdale, Florida 33351. The physical location of Strax Rejuvenation, the plastic surgery center, is 4300 North University Drive, Suite A-202,

Lauderhill, Florida 33351. Strax Rejuvenation maintains two websites: www.straxrejuvenation.com and www.straxplasticsurgery.com. On the former link, Strax Rejuvenation describes itself as a provider of "a broad range of services" and that it "serves patients nationwide." The company also states in large, bold font on the latter link that Strax Rejuvenation is "The Nation's Largest Plastic Surgery Center." The public corporate records for Strax Rejuvenation indicate that it is a fictitious name of Jade Holdings Group, LLC.

16. Defendant SRAI, INC. f/k/a STRAX REJUVENATION AND AESTHETICS INSTITUTE, LLC f/k/a STRAX REJUVENATION AND AESTHETICS INSTITUTE, INC. ("SRAI"), is an inactive Florida corporation that was organized under the laws of the State of Florida. To the best of plaintiff's knowledge, SRAI was the marketing arm for Strax Rejuvenation's plastic surgery practice. At an unknown time in 2013, SRAI declared Chapter 7 bankruptcy, forming into an unknown successor entity. The principal place of business provided in the public corporate records is 4300 North University Drive, Suite A-202, Lauderhill, Florida 33351.

17. Defendants COSMETIC SURGERY ASSOCIATES OF BOCA LLC d/b/a NEW LOOK BOCA ("New Look Boca") is a Florida limited liability company organized under the laws of the State of Florida. Its principal place of business as listed in its public corporate records is 899 Meadows Road, Suite 203, Boca Raton, Florida, 33431. The physical location of New Look Boca, the plastic surgery center, is the same. New Look Boca maintains two websites: http://www.newlookboca.com and http://bocaratonsurgery.com. On the former link, New Look Boca describes itself as a resource for "Best value cosmetic surgery . . . offer[ing] some of the lowest prices you'll find for cosmetic surgery procedures, including unbeatable financing offers." The latter link is no longer active but continues to be listed on New Look Boca's social media profiles. The public corporate records for New Look Boca indicate that it is a fictitious name owned by Cosmetic Surgery Associates of Boca.

18. BOCA RATON SURGERY CENTER LLC d/b/a BOCA RATON SURGERY CENTER ("Boca Raton Surgery") is a Florida limited liability company organized under the

laws of the State of Florida. Its principal place of business is 899 Meadows Road, Suite 301, Boca Raton, Florida 33431. On information and belief, Boca Raton Surgery Center LLC no longer has a physical location from which it operates a plastic surgery firm, having rebranded as New Look Boca—which now occupies the same address and lists the http://bocaratonsurgery.com website link as its own. The public corporate records for Boca Raton Surgery Center indicate that it is a fictitious name owned by Boca Raton Surgery Center LLC. The records also indicate that Boca Raton Surgery Center LLC, in turn, is managed by Jade Holdings, LLC, whose address is listed as 899 Meadows Road, Suite 301, Boca Raton, Florida 33431.

19.     Defendants ALBERT AUER and JEFFERY A. DAVIS are current executives and/or officers who manage Jade Holdings, Strax Rejuvenation, New Look Boca, and Boca Raton Surgery. Public corporate records for the four entities indicate that Mr. Davis is the CEO of both Jade Holdings and Strax Rejuvenation, while Mr. Auer is a former President of Jade Holdings and current officer within both Strax Rejuvenation and Jade Holdings. Public corporate records also indicate both Mr. Auer and Mr. Davis are former and current officers, respectively, of New Look Boca and Boca Raton Surgery—signing corporate documentation and listing themselves as officers. To the best of plaintiff's knowledge, Mr. Davis and Mr. Auer reside in Florida.

20.     Defendants PHILLIP M. FEANNY and MICHAEL GARNICK are former officers and/or partners of Jade Holdings and Strax Rejuvenation. Public corporate records indicate both Mr. Feanny and Mr. Garnick were officers of the two entities, signing corporate documentation and listing themselves as managing executives. Plaintiff does not have knowledge of when Mr. Feanny and Mr. Garnick stepped down or the nature of their current roles. To the best of plaintiff's knowledge, Mr. Feanny and Mr. Garnick reside in Florida.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL PARTIES

### Dr. Toledo's Practice

21. Highland Park specifically realleges and incorporates herein by reference each and every allegation set forth above.

22. Dr. Toledo is one of the country's leading plastic surgeons. He is board-certified by the American Board of Plastic Surgery and by the American Board of Otolaryngology, Head & Neck Surgery. He is a Fellow of the American College of Surgeons and the American Society of Plastic Surgeons. He has published numerous publications in his field and is regularly ranked among the top plastic surgeons in Texas. He was the plastic surgery representative on the advisory board for Blue Cross/Blue Shield of Texas and for the Texas Medical Association. In December 2015, he was named SuperDoctor 2015 by Texas Monthly magazine.

23. Dr. Toledo specializes in plastic, cosmetic, and aesthetic surgery of the face and body. In particular, he has a three-fold focus on remedying aging: face and eyes, breast augmentation and body contouring, and rhinoplasty. This includes but is not limited to a variety of procedures, including facelifts, rhinoplasty (nose reconstruction), thigh lifts, body lifts, liposuction, abdominoplasty (tummy tuck), and breast procedures.

24. Dr. Toledo's experience in plastic surgery is extensive. He attended Southwestern Medical School in Dallas, Texas, graduating at the top of his class and receiving the top award in the United States for his research in nasal surgery from a national plastic surgery convention. He then spent seven years obtaining post-graduate surgical training consisting of internships and residencies at the following institutions: Baylor University Medical Center, Duke University Medical Center, Louisiana State University Medical Center, and the many hospitals that make up the Texas Medical Center in Houston. While in Houston, Dr. Toledo trained at the prestigious University of Texas M.D. Anderson Cancer Institute.

25. Dr. Toledo primarily attracts new patients by reputation and by displaying accurate before-and-after patient photographs on his web sites, including the web site maintained at the domain http://www.toledoplasticsurgery.com.

26. Many patients who elect to have plastic surgery performed are willing to travel, even internationally, to have top-flight work performed. Dr. Toledo's renown and web presence attract patients from all over the world.

### The Misappropriated Images

27. There are five image sets at issue in this case, two pertaining to facelifts and the others pertaining to breast augmentations, breast lifts (reductions), and thigh lifts, respectively—all of which were performed by Dr. Toledo and misappropriated by defendants for personal gain.

*Image One: Breast Augmentation Patient*

28. In about 1996, Dr. Toledo began treating a patient (for reasons of privacy and discretion, this Complaint will refer to her simply as "the breast augmentation patient") and ultimately performed a breast augmentation procedure on her. The patient agreed to be photographed before and after and signed a consent allowing Dr. Toledo to use her images on his web site (the "breast augmentation photographs"). The before-and-after breast augmentation photographs were taken by an employee of Highland Park, and plaintiff owns all right, title, and interest in and to the photographs.

29. A true and correct copy of the breast augmentation photographs as they appear on Dr. Toledo's web site maintained at http://www.toledoplasticsurgery.com is attached hereto as Exhibit A.

*Image Two: First Facelift Patient*

30. In about 2007, Dr. Toledo began treating a patient (for reasons of privacy and discretion, this Complaint will refer to her simply as "the first facelift patient") and ultimately performed a facelift procedure on her. The patient agreed to be photographed before and after and signed a consent allowing Dr. Toledo to use her images on his web site (the "first facelift

photographs"). The before-and-after first facelift photographs were taken by an employee of Highland Park, and plaintiff owns all right, title, and interest in and to the photographs.

31. A true and correct copy of the first facelift photographs as they appear on Dr. Toledo's web site maintained at http://www.toledoplasticsurgery.com is attached hereto as Exhibit B.

*Image Three: Second Facelift Patient*

32. In about November 2007, Dr. Toledo began treating a patient (for reasons of privacy and discretion, this Complaint will refer to her simply as "the second facelift patient") and ultimately performed a facelift procedure on her. The patient agreed to be photographed before and after and signed a consent allowing Dr. Toledo to use her images on his web site (the "second facelift photographs"). The before-and-after second facelift photographs were taken by an employee of Highland Park, and plaintiff owns all right, title, and interest in and to the photographs.

33. A true and correct copy of the second facelift photographs as they appear on Dr. Toledo's web site maintained at http://www.toledoplasticsurgery.com is attached hereto as Exhibit C.

*Image Four: Breast Lift (Reduction) Patient*

34. In about 1998, Dr. Toledo began treating a patient (for reasons of privacy and discretion, this Complaint will refer to her simply as "the breast lift patient") and ultimately performed a breast lift (sometimes known as a breast reduction) procedure on her. The patient agreed to be photographed before and after and signed a consent allowing Dr. Toledo to use her images on his web site (the "breast lift photographs"). The before-and-after breast lift photographs were taken by an employee of Highland Park, and plaintiff owns all right, title, and interest in and to the photographs.

35. A true and correct copy of the breast lift photographs as they appear on Dr. Toledo's web site maintained at http://www.toledoplasticsurgery.com is attached hereto as Exhibit D.

*Image Five: Thigh Lift Patient*

36. In about 2007, Dr. Toledo began treating a patient (for reasons of privacy and discretion, this Complaint will refer to her simply as "the thigh lift patient") and ultimately performed a thigh lift procedure on her. The patient agreed to be photographed before and after and signed a consent allowing Dr. Toledo to use her images on his web site (the "thigh lift photographs"). The before-and-after thigh lift photographs were taken by an employee of Highland Park, and plaintiff owns all right, title, and interest in and to the photographs.

37. A true and correct copy of the thigh lift photographs as they appear on Dr. Toledo's web site maintained at http://www.toledoplasticsurgery.com is attached hereto as Exhibit E.

### The Infringing Websites

38. In or about 2010, Dr. Toledo posted the photographs of the breast augmentation, first and second facelift, breast lift (reduction), and thigh lift patients, respectively, on his web site. These photographs present compelling before-and-after images of Dr. Toledo's patients and visibly demonstrate Dr. Toledo's skill and training as a Board Certified Plastic Surgeon.

39. Recently, Dr. Toledo observed that the photographs were displayed on three websites maintained by the defendants under different monikers:

   i. Jade Today URL: http://jadetoday.com/procedures/face-procedures/facelift-surgery/ for both facelift images, http://jadetoday.com/procedures/breast-procedures/breast-reduction/ for the breast lift (reduction) images, and http://jadetoday.com/procedures/body-procedures/thigh-lift/ for the thigh lift images (the "Jade Today web sites"). After Dr. Toledo noticed the infringement and Dr. William Portuese commenced a related lawsuit in this Court against Jade Today with similar allegations of misrepresentation (No. 0:16-cv-60138-DPG), Jade Today removed all of the offending facelift, breast lift (reduction), and thigh lift photographs. Dr. Toledo was able to preserve screenshots of the webpages when the infringing photographs were

displayed online, with true and correct copies of the webpages attached hereto as Exhibit F.

ii. <u>Strax Rejuvenation URL</u>: http://www.straxrejuvenation.com/photo-gallery/breast-augmentation/#gallery for the breast augmentation images and http://www.straxrejuvenation.com/photo-gallery/facelift/#gallery for both facelift images (the "Strax Rejuvenation web sites"). Just like with the Jade Today website, Strax Rejuvenation removed the offending breast augmentation and facelift images shortly after Dr. William Portuese filed his suit. Dr. Toledo was able to preserve screenshots of the webpages while Strax Rejuvenation was still displaying the infringing photographs. True and correct copies of the webpages are attached hereto as Exhibit G.

iii. <u>New Look Boca URL</u>: http://newlookboca.com/before-after/ for both facelift patients' images as well as the breast lift (reduction) patient's images (the "New Look Boca web site"). As of this filing, the photos are still featured on New Look Boca's "Before & After Gallery." A true and correct copy of the webpage is attached hereto as Exhibit H.

**Jade Today Infringement**

40. The photographs on Jade Today's website are displayed in a manner that attempts to pass off Dr. Toledo's surgical results as those of defendant's affiliated plastic surgeons. The photographs were featured on the main pages for each respective procedure, where defendant explains the ease of obtaining financing for the surgeries. Jade Today then places a heading over the respective image sets with the phrase: "Take a look at **our amazing results**." (emphasis added). In discussing facelifts, breast reductions, and thigh lifts, Jade Today presents a series of before-and-after photographs, including those of Dr. Toledo's patients, without attribution, credit, or clarification—allowing the work depicted in the photographs to speak for itself. Dr. Toledo is shocked that a plastic surgery provider would falsely advertise in this fashion.

41. On information and belief, Jade Today and/or its affiliates intentionally caused the photographs to be displayed on the Jade Today web site, knowing that the photographs displayed the work of Dr. Toledo and not any work performed by Jade Today's affiliated plastic surgeons.

42. On information and belief, Jade Today displays the photographs for the express purpose of deceiving potential patients into thinking that Jade Today's plastic surgeons and specialists had performed the work displayed in the photographs. On information and belief, Jade Today posted such photographs in order to persuade patients, who might otherwise have obtained plastic surgery services from Dr. Toledo, into obtaining surgery services from Jade Today and its affiliated physicians.

43. Defendant and Dr. Toledo are in direct competition for patients seeking plastic surgery services in Florida and nationwide, and Jade Today's actions have caused harm to Dr. Toledo. Jade Today does not limit its services to Florida and directs patients from any part of the country to Florida practitioners with national practices, affecting the pool of patients and referral sources that comprise Dr. Toledo's business.

**Strax Rejuvenation Infringement**

44. The photographs on Strax Rejuvenation's website were also displayed in a manner that egregiously attempted to pass off Dr. Toledo's surgical results as those of Strax Rejuvenation's plastic surgeons. The photographs are featured in the "Before and After Gallery," with the preamble before the list of available procedure images: "These before and after photos are considered a sampling of our portfolio" (emphasis added). Any reader would believe that the photos in the gallery are examples of work performed by Strax Rejuvenation plastic surgeons.

45. The respective galleries for breast augmentation and facelift before-and-after images bear a large heading in all capitals: "Photos on this page depict ACTUAL PATIENTS." In these galleries, Strax Rejuvenation included the photographs of Dr. Toledo's patients. The photographs of Dr. Toledo's patients are featured without attribution, credit, or clarification—

allowing the work depicted in the photographs to speak for itself. Dr. Toledo is shocked that a plastic surgery firm would falsely advertise in this fashion.

46. On information and belief, Strax Rejuvenation and/or its affiliates intentionally caused the photographs to be displayed on the Strax Rejuvenation web site, knowing that the photographs displayed the work of Dr. Toledo and not any work performed by Strax Rejuvenation's plastic surgeons.

47. On information and belief, Strax Rejuvenation displays the photographs for the express purpose of deceiving potential patients into thinking that Strax Rejuvenation's plastic surgeons and specialists had performed the work displayed in the photographs. On information and belief, Strax Rejuvenation posted such photographs in order to persuade patients, who might otherwise have obtained plastic surgery services from Dr. Toledo, into obtaining surgery services from Strax Rejuvenation and its physicians.

48. Strax Rejuvenation and Dr. Toledo are in direct competition for patients seeking plastic surgery services in Florida and nationwide, and Strax Rejuvenation's actions have caused harm to Dr. Toledo. Strax Rejuvenation advertises itself on its websites as "The Nation's Largest Plastic Surgery Center," with a practice "that serves patients nationwide." Dr. Toledo's practice is equally national in scope, making Strax Rejuvenation and Dr. Toledo competitors for the same pool of consumers and referrals.

### New Look Boca Infringement

49. The photographs on New Look Boca's website were also displayed in a manner that egregiously attempted to pass off Dr. Toledo's surgical results as those of New Look Boca's plastic surgeons. The photographs are featured in the "Before & After Gallery." New Look Boca links to the Gallery on the page for every procedure (including facelifts and breast reductions) after describing the benefits the patient can expect from having surgery at New Look Boca. Any reader would believe that the photos in the gallery are examples of work performed by New Look Boca plastic surgeons.

50. In the respective galleries for facelift and breast reduction before-and-after images, New Look Boca included the photographs of Dr. Toledo's patients. The photographs of Dr. Toledo's patients are featured without attribution, credit, or clarification—allowing the work depicted in the photographs to speak for itself. Dr. Toledo is shocked that a plastic surgery firm would falsely advertise in this fashion.

51. On information and belief, New Look Boca and/or its affiliates intentionally caused the photographs to be displayed on the New Look Boca web site, knowing that the photographs displayed the work of Dr. Toledo and not any work performed by New Look Boca's plastic surgeons.

52. On information and belief, New Look Boca displays the photographs for the express purpose of deceiving potential patients into thinking that New Look Boca's plastic surgeons and specialists had performed the work displayed in the photographs. On information and belief, New Look Boca posted such photographs in order to persuade patients, who might otherwise have obtained plastic surgery services from Dr. Toledo, into obtaining surgery services from New Look Boca and its physicians.

53. New Look Boca and Dr. Toledo are in direct competition for patients seeking plastic surgery services in Florida and nationwide, and New Look Boca's actions have caused harm to Dr. Toledo. New Look Boca does not limit the advertisement of its services to Florida and directs patients from any part of the country to Florida practitioners with national practices, affecting the pool of patients and referral sources that comprise Dr. Toledo's business.

## V. CLAIMS

### Count One:

### Violation of Section 43(a) of Lanham Act, 15 U.S.C. § 1125(a)

54. Highland Park specifically realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1-53 above.

55. In their commercial use of the photographs defendants have knowingly, intentionally, deliberately, and in bad faith materially misrepresented in interstate commerce

the nature, characteristics, and qualities of their surgical outcomes in violation of 15 U.S.C. § 1125(a)(1)(B) by passing off Dr. Toledo's surgical outcomes as those of defendants' plastic surgeons and medical affiliates.

56. Defendants' false representations were knowing and material because representations concerning surgical outcomes are likely to influence patient decisions. Indeed, those false representations were intended, have, and are likely to deceive consumers of plastic surgery services and to thereby influence their decision whether to have surgical services performed by Dr. Toledo or by defendants' physicians. Since defendants bill themselves as practices with national clientele and focus, their consumer and referral pool overlaps with Dr. Toledo's in a field where patients traveling for care is commonplace.

57. As a direct and proximate result of defendants' false advertising, Dr. Toledo and Highland Park have suffered injury. Accordingly, pursuant to 15 U.S.C. § 1117(a), Dr. Toledo seeks to recover actual, compensatory, and consequential damages in an amount to be determined at trial.

58. In addition, pursuant to 15 U.S.C. § 1117(a), Dr. Toledo is entitled to recover all of defendants' profits, including but not limited to profits from the performance of plastic surgery services, from at least the date that defendants first posted the infringing photographs online and/or used them in any advertising (print, TV, or online).

59. Dr. Toledo also requests permanent injunctive relief as authorized by 15 U.S.C. § 1116(a), as well as state common law and principles of equity. Defendants injected the materially false advertisements into interstate commerce with the intent to mislead, confuse, and deceive potential patients of Dr. Toledo. Accordingly, defendants' actions threaten and are likely to injure Dr. Toledo.

60. Defendants' actions have caused Dr. Toledo to suffer immediate and irreparable harm, and unless defendants are enjoined from continuing their wrongful actions, Dr. Toledo will continue to suffer irreparable injury, harm, and damages. Dr. Toledo, therefore, requests

that the Court enter a permanent injunction enjoining defendants from using the photographs or any other patient photographs depicting surgical outcomes that are not their own.

61. As a result of defendants' willful, deliberate, egregious, and bad faith violations of the Lanham Act, Dr. Toledo has been required to retain the undersigned counsel to prosecute the claims asserted herein. Pursuant to 15 U.S.C. § 1117(a) and (b), Dr. Toledo seeks to recover from defendants treble damages, and his attorneys' fees and costs incurred in this action.

## Count Two:

## Violation of Integrity of Copyright Management Information under the

## Digital Millenium Copyright Act, 17 U.S.C. § 1201 et seq.

62. Highland Park specifically realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1-53 above.

63. Dr. Toledo, on his website, posted and displayed the before-and-after photographs with copyright management information under 17 U.S.C. § 1202(c). See attached Exhibits A, B, C, D and E for screenshots of how the photographs appear on Dr. Toledo's website.

64. Defendants intentionally removed the copyright management information from the photographs without prior authorization from Dr. Toledo.

65. Defendants removed and altered the copyright management information with reasonable grounds to know that it would induce, facilitate, or conceal a copyright infringement in violation of the Digital Millenium Copyright Act, 17 U.S.C. §§ 1202(b)-(c).

66. As a result of the knowing removal of copyright management information described above, Dr. Toledo is entitled to relief including but not limited to injunctive relief, monetary damages, prejudgment interest, and attorneys' fees under 17 U.S.C. § 1203.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court enter judgment against defendants as follows:

  A. That plaintiff be granted injunctive relief under 15 U.S.C. §§ 1051 et seq. and 17 U.S.C. §§ 1203; that defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them be enjoined from using the photographs or any other patient photographs depicting surgical outcomes that are not their own;

  B. That defendants file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which defendants have complied with the terms of the injunction;

  C. That defendants be ordered to correct any erroneous impression persons may have derived from the misappropriation concerning the nature, characteristics, or qualities of defendants' surgical training and outcomes, including, without limitation:

    1) Sending a registered letter (with a copy to plaintiff) to all patients or prospective patients who had any communication with defendants subsequent to the date that the infringing photographs were first used by defendants on the web or anywhere; and

    2) Placing corrective advertising on defendants' web sites, informing patients and prospective patients of defendants' misrepresentations regarding surgical outcomes;

  D. That defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against plaintiff by using false, deceptive, or misleading descriptions or representations of fact that misrepresent the nature, quality, and characteristics of defendants' surgical outcomes;

  E. That plaintiff be awarded damages pursuant to 15 U.S.C. § 1117(a), sufficient to compensate it for damage caused by defendants' false and misleading use of the photographs;

  F. That plaintiff be awarded defendants' profits derived by reason of said acts, or as determined by an accounting;

G. That such damages and profits be trebled and awarded to plaintiff and that plaintiff be awarded its costs, attorneys' fees, and expenses in this suit under 15 U.S.C. § 1117, as a result of defendants' willful, intentional, and deliberate acts violating the Lanham Act;

H. That plaintiff be awarded damages pursuant to 17 U.S.C. § 1203, in an amount equal to plaintiff's damages and any additional profits of defendants on account of defendants' copyright infringement and removal of copyright management information;

I. That plaintiff be granted prejudgment and post-judgment interest;

J. That plaintiff be granted costs associated with the prosecution of this action; and

K. That plaintiff be granted such further relief as the Court may deem just.

DATED: April 6, 2016

Respectfully submitted,

s/ Brian M. Taillon
Edward F. McHale (Florida Bar No. 190300)
Brian M. Taillon (Florida Bar No. 678635)
Andrew D. Lockton (Florida Bar No. 115519)
McHALE & SLAVIN, P.A.
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
Telephone: (561) 625-6575
Facsimile: (561) 625-6572
E-mail: litigation@mchaleslavin.com

Gregory F. Wesner WSBA #30241
(*pro hac vice pending*)
LANE POWELL PC
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
Telephone: 206.223.7000
Facsimile: 206.223.7107
E-mail: WesnerG@LanePowell.com

*ATTORNEYS FOR PLAINTIFF*

129814.0001/6629694.1